UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:**
**10-20457-CIV-MORENO**

CHRISTELLE HAMON,

      Plaintiff,

vs.

CASA CASUARINA, LLC and PETER T.
LOFTIN,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS TO COUNT III ONLY

THIS· CAUSE came before the Court upon Defendants' Motion to Dismiss Amended

Complaint **(D.E. No. 20)**, filed on **May 4, 2010**. Defendants' motion argues for the dismissal of all

three counts contained in Plaintiff's Amended Complaint (D.E. No. 18). The Court has already denied

the motion to dismiss as to Counts I and II, which allege the existence of a hostile work environment

under Title VII of the Civil Rights Act of 1964 (Count I) and the Florida Civil Rights Act of 1991

(Count II). (*See* D.E. No. 22.) After discovery is complete at the summary judgment stage, the Court

will consider the sexual harassment claims alleged in Counts I and II more fully, in accordance with

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010) (en banc), and *Mendoza v.*

*Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (en banc). At this time, this ORDER addresses

Defendants' motion to dismiss only as it pertains to Count III, Plaintiff's claim for intentional

infliction of emotional distress under Florida law.

Plaintiff Christelle Hamon sues Casa Casuarina, Inc. and Peter T. Loftin, who was the sole

partner and managing member of Casa Casuarina, Inc. Ms. Hamon claims to have been subjected to

sexual harassment and intentional infliction of emotional distress by Loftin while she was employed at Casa Casuarina, Inc.'s boutique hotel, where Loftin lived.  The Court finds that the factual evidence as claimed by Plaintiff, although sufficient to establish sexual harassment, falls short of the requisite threshold for the tort of intentional infliction of emotional distress.   Therefore, that count is DISMISSED as the conduct of Defendant Loftin was not repetitive or persistent.

## I.  FACTUAL BACKGROUND

At all times relevant to this action, Casa Casuarina was a boutique luxury hotel with a restaurant and private lounge located on Ocean Drive in the section of Miami Beach, Florida known as South Beach.  Defendant Loftin was the sole partner and managing member of Casa Casuarina, Inc., the corporation which owned the hotel.  Loftin resided in one of the suites in the hotel.  For a two-month period from January to March of 2009, Plaintiff Hamon was employed as a front desk receptionist at Casa Casuarina.  Ms. Hamon worked during the night, with her regular shift starting at 11:00 p.m. and ending at 7:00 a.m.

According to Ms. Hamon, at approximately 2:45 a.m. in the early morning of March 13, 2009, after a night when Casa Casuarina hosted an event, Ms. Hamon was asked to bring silverware and napkins to Loftin's hotel suite. The door to Loftin's suite was left unlocked for her to enter.  When Ms. Hamon entered the suite, Loftin was nude on the bed, and a nude woman was performing oral sex on him.  Both Loftin and the other woman exposed their genitals to Ms. Hamon and invited her to participate in their sexual activity.  Ms. Hamon left the silverware on a table and immediately removed herself from the bedroom to the living area of the suite where she could still converse with Loftin and the woman from behind a wall.  Loftin then instructed Ms. Hamon to ask the night security

-2-

guard to come to the suite, and warned Ms. Hamon that she should not tell anyone else about what had transpired. Ms. Hamon estimates that she was in Loftin's suite for a total of two and a half to three minutes.

Ms. Hamon reported Loftin's conduct to the General Manager of Casa Casuarina, but no actions were taken. For the next ten days, Loftin continued to refer to Ms. Hamon as "sweetheart" and "darling" whenever he would call the front desk, but no other sexual incident was witnessed by Ms. Hamon. Ms. Hamon claims to have suffered emotional distress due to her embarrassment and humiliation experienced during those three minutes of the early morning hours of March 13. Ms. Hamon also became nervous when she was working late at night, because Loftin, the security guard, and herself were occasionally the only people left on the hotel's property. Ten days after the incident that occurred in Loftin's suite, Ms. Hamon informed her superiors that she would no longer continue working for Casa Casuarina, Inc. because she felt afraid and unsafe after her experience with Loftin.

## II. LEGAL STANDARD OF REVIEW FOR A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Those "[f]actual allegations must be enough to raise a right to relief above

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. *See id.* at 1950.

### III. LEGAL ANALYSIS

Defendants move to dismiss Count III, the claim for intentional infliction of emotional distress against Defendant Loftin.  Defendants argue that Hamon has failed to plead sufficient facts to show that Loftin's alleged conduct was "outrageous."

Under Florida law, there are four elements that must be met to prove the tort of intentional infliction of emotional distress: (1) the defendant engaged in intentional or reckless conduct, (2) the conduct was "outrageous," (3) the conduct caused emotional distress, and (4) the emotional distress was severe.  *See Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (recognizing the tort of intentional infliction of emotional distress under Florida law)).  "The viability of a claim for intentional infliction of emotional distress is highly fact-dependent and turns on the sum of the allegations in the specific case at bar." *Johnson v. Thigpen*, 788 So. 2d 410, 413 (Fla. 1st DCA 2001).  The issue of whether the conduct at issue was outrageous is measured by an objective test.  *See Vernon v. Med. Mgmt. Assoc. of Margate, Inc.*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996).  Further, the question of what constitutes outrageous conduct is a question of law to be resolved by the court, not a question of fact for a jury. *See De la Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002).

In *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985), the Florida

Supreme Court recognized the tort of intentional infliction of emotional distress, and adopted the

standard for the cause of action from Section 46 of the Restatement (Second) of Torts. The Florida

Supreme Court also approvingly quoted the Restatement's explanation of outrageous conduct:

> Liability has been found only where the conduct has been so outrageous in character,
> and so extreme in degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized community. Generally, the
> case is one in which the recitation of facts to an average member of the community
> would arouse his resentment against the action, and leave him to exclaim,
> "Outrageous!"

*Metro. Life Ins.*, 467 So. 2d at 278-79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965));

*see also Vernon*, 912 F. Supp. at 1557.

Florida state courts and federal courts interpreting Florida law have typically found that for

a claim of intentional infliction of emotional distress in the workplace to survive a motion to dismiss,

the outrageous conduct must involve repeated and persistent offensive actions. *See Thigpen*, 788 So.

2d at 413-14. Courts have often found that claims involving only verbal abuse in the workplace or

isolated incidents of offensive conduct are not severe enough to be considered outrageous. *See id.*

at 413. "It is the element of offensive, non-negligible physical contact that, when coupled with

persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute

conduct of sufficient outrageousness to support a claim for intentional infliction of emotional

distress." *Vernon*, 912 F. Supp. at 1559.

The "touchstone" of viable claims of intentional infliction of emotional distress occurring in

the workplace is that they allege circumstances of outrageousness that involve "repeated verbal abuse

coupled with repeated offensive physical contact." *Thigpen*, 788 So. 2d at 413 (citing *Vernon*, 912

F. Supp. at 1559). For example, the court in *Stockett v. Tolin*, 71 F. Supp. 1536, 1556 (S.D. Fla.1992), allowed a claim for intentional infliction of emotional distress and emphasized the repetitive nature of the conduct, including "groping and kissing," "repeated and offensive touching of the most private parts of [the plaintiff's] body," and "pinning the [p]laintiff against the wall and refusing to allow the [p]laintiff to escape." The harassment in *Stockett* was repetitive and persistent, and thus, sufficiently outrageous to allow a claim for emotional distress. Conversely, the U.S. Court of Appeals for the Eleventh Circuit found that allegations of only verbal sexual harassment, including inappropriate jokes and sexual solicitations, fall short of a sufficient showing of outrageousness. *See Studsill v. Borg Warner Leaving*, 806 F.2d 1005, 1008 (11th Cir. 1986). Further, an employer's verbal attempt to induce an employee into participating in sexual activity is not sufficiently outrageous to support a claim for intentional infliction of emotional distress. *See Ponton v. Scarfone*, 468 So. 2d 1009 (Fla. 2d DCA 1985).

The facts alleged in the case at hand are unique. In sum, Ms. Hamon complains of one incident, which lasted a total of less than three minutes, where her employer called her to watch him engage in sexual activity with another woman in his bedroom and briefly encouraged her to join in. For most of the three minutes, Ms. Hamon had removed herself behind a wall; thus, she could not see the improper conduct exhibited by Loftin. Ms. Hamon was basically induced into seeing Loftin nude and involved in a sex act in his suite for a matter of seconds. Obviously, Loftin's conduct in the presence of the hotel desk receptionist, if true, was crude, obnoxious, and inappropriate. It is critical, however, to emphasize that there was no physical touching involved and that this was a one-time occurrence lasting seconds. Ms. Hamon was forced into a situation where she had to witness her employer nude and involved in sexual activity for seconds, and then converse with her employer for

a couple of minutes, but there are no allegations of physical harassment or repeated incidents.

The setting of Loftin's hotel suite also makes the factual situation described in Hamon's Amended Complaint unique. Loftin, Ms. Hamon's boss, was engaged in a sexual act in his own hotel suite, where he resided. While the conduct alleged here is undeniably lewd and inappropriate, it is less offensive because it occurred after hours in a hotel where the employer also lived. Clearly, had the sexual display and solicitation occurred in a more traditional workplace environment, such as in an office, factory, etc., then Ms. Hamon's claims would be stronger. While this unique factual distinction is far from determinative, it is worth noting that this incident occurred in a setting that was both a workplace and the employer's residence. This factor affects whether Loftin's conduct in his bedroom suite can be considered objectively outrageous.

There is no doubt that the allegations of Loftin's conduct on the night of March 13, 2009 present an offensive and inappropriate way of behaving in the workplace toward an employee. However, the conduct is not so "atrocious" or "utterly intolerable in a civilized community" to be considered outrageous, even considering all facts in the Amended Complaint as true and in the light most favorable to Hamon. *Metro. Life Ins.*, 467 So. 2d at 278-79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The conduct does not share the same "touchstone" of repetitive verbal and physical harassment as the claims for intentional infliction of emotional distress that have been recognized by the Florida courts and federal courts interpreting Florida law. *See Thigpen*, 788 So. 2d at 413 (citing *Vernon*, 912 F. Supp. at 1559). This was a one-time, brief occurrence that involved no physical contact and no overly forceful verbal solicitation. The factual allegations are insufficient to constitute outrageous conduct, and therefore, Count III fails to meet the required elements of a viable claim for intentional infliction of emotional distress under Florida law.

## IV.  CONCLUSION

The factual allegations contained in the Amended Complaint are insufficient to show that the conduct complained of was outrageous, and thus, fail to meet the required elements for a viable claim for intentional infliction of emotional distress.  Therefore, Plaintiff Hamon's Count III claim for intentional infliction of emotional distress fails to state a claim upon which relief can be granted. Accordingly, it is

**ADJUDGED** that the motion to dismiss is GRANTED as to Count III of the Amended Complaint.  Count III of the Amended Complaint is hereby DISMISSED.  Further, it is

**ORDERED** that both Defendants shall have up through and including **June 30, 2010** to file an answer to the remaining counts of the Amended Complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this /8 day of June, 2010.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record